Filed 9/13/24  In re P.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re P. S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083462 |
| Plaintiff and Respondent, | (Super.Ct.No. J293658) |
| v. | OPINION |
| J.H. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Jill S. Smith, under appointment by the Court of Appeal, for Defendant and Appellant, J.H.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant, S.S.

1

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

S.S. (mother) appeals from the juvenile court's order terminating parental rights (Welf. & Inst. Code,[1] § 366.26) as to her child, P.S. (the child). Mother contends the matter must be conditionally reversed and remanded because the San Bernardino County Children and Family Services (CFS) failed to discharge its duty of inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et. seq.) (ICWA) and related California law (§ 224.2). J.H. (father) has filed a separate brief simply joining in mother's arguments. We affirm.

## PROCEDURAL BACKGROUND

On April 3, 2022, mother gave birth to the child at a county hospital in Parker, Arizona. Mother tested positive for amphetamines. The child showed symptoms of withdrawal, had high-pitch screams and loose stools, and "needed morphine as part of her treatment." Mother admitted to taking methadone, and she admitted to taking fentanyl throughout her pregnancy. She completed a hair follicle test on April 15, which came back positive for methamphetamine. Mother stated she had been living in Earp, California for almost a year and a half, but she continued to collect benefits and medical insurance in Arizona because there were no medical providers in Earp.

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

2

On April 18, 2022, the child was taken into temporary physical custody by the Arizona Department of Child Safety (ADCS), under the authority of an order by the Arizona superior court. An Arizona social worker placed the child with a couple in Arizona. Mother was a neighbor of the couple and longtime friend of the husband. ADCS gave mother weekly visitation with the child and filed a dependency petition.

Mother insisted the child be brought to California and the paternal grandmother be assessed for placement. CFS requested the case to be transferred to San Bernardino County and the child placed with a relative or foster care "via regulations stipulated in UCCJEA [(the Uniform Child Custody Jurisdiction and Enforcement Act)]."

On June 29, 2022, CFS filed a section 300 petition on behalf of the child, alleging she came within the provisions of subdivisions (b) (failure to protect) and (j) (abuse of sibling).

The court held a detention hearing on June 30, 2022, and mother and father (the parents) appeared telephonically and were represented by counsel. The court asked mother if she had any Native American Indian heritage, and she said no. Mother identified father as the child's biological father. Father also denied having any Indian heritage. He confirmed that he and mother were living in California. The court ordered the matter to be transferred to the San Bernardino Juvenile Dependency court and detained the child from the parents. Father and mother each filed a CFS "Family Find and ICWA Inquiry" form, stating he/she had no Indian ancestry.

On July 18, 2022, the social worker filed a jurisdiction/disposition report requesting a continuance of the jurisdiction hearing in order to obtain child welfare records from ADCS. The social worker included a copy of ADCS's application for a temporary custody order and the Arizona court's signed order authorizing ADCS to remove the child. The court granted the continuance.

The social worker further reported that, on July 8, 2022, she inquired of the parents whether they had Native American ancestry, and they both again denied it. Mother provided her father's name and contact information to inquire further with relatives. She also provided her mother's name but said she did not have any contact information for her. Father provided the names of his parents and his mother's contact information but said his father was deceased. On July 13, the social worker placed a call to the maternal grandfather, who denied Native American ancestry and stated his family was Norwegian. Another social worker contacted the paternal grandmother, who also denied Native American ancestry. The social worker subsequently inquired of a paternal cousin, S.P., regarding Native American ancestry, and she denied having any.

The court held a contested jurisdiction/disposition hearing on December 16, 2022, where father appeared in person for the first time. The court asked father if he had any Native American ancestry, and he said no. Father filed an ICWA-020 form, also indicating he had no Indian heritage. Mother testified on her own behalf. She said she believed she could benefit from reunification services and that she had stabilized her housing situation. Mother testified that she currently lived in a three-bedroom house

4

"right across the street from [her] mom and [her] stepdad" and that she had "good support there." The court sustained the petition and noted that the ICWA inquiry was to continue. The court denied father reunification services, since he was a "mere biological father," and it bypassed mother's services. The court declared the child a dependent, removed her from the parents' custody, and set a section 366.26 hearing.

On January 26, 2023, the social worker filed a CFS 6.7 report regarding her ICWA findings. She reported that she spoke with the maternal grandfather on January 23, 2023; he stated that he had no Native American heritage and that, to his knowledge, the maternal grandmother (MGM) was of German descent. He did not have any contact information for her and advised the social worker to talk to mother regarding Indian ancestry. The social worker did so, and mother reiterated that she did not have any Native American heritage. The social worker inquired about any relatives she could interview, and mother said she had no additional information to provide. The social worker asked mother about the MGM, and mother said she would contact the MGM and ask about any Indian heritage. Mother agreed to either have the MGM contact the social worker or mother would contact the social worker to provide the MGM's contact number. The social worker later received a text message from mother saying, "My mother doesn't have a contact number." The social worker also reported that father denied having Native American ancestry, and that, on January 25, 2023, she spoke with the paternal grandmother, who denied Native American ancestry. The social worker summarized that there was no additional information regarding Indian ancestry for the child.

5

On January 30, 2023, the court held an ICWA notice review hearing. CFS informed the court that all relatives had been interviewed with respect to ICWA, and it asked the court to find that it had complied with its duty of inquiry and that ICWA did not apply. The court did so.

After several continuances, the court held a section 366.26 hearing on March 12, 2024. The court found the child adoptable and terminated parental rights.

## DISCUSSION

### CFS Complied with Its Duty of Initial Inquiry

Mother argues that CFS failed to comply with the duty of initial inquiry under section 224.2 by not inquiring of extended relatives—specifically, the MGM—about the child's potential Indian ancestry. Thus, she contends the juvenile court's finding that ICWA does not apply is not supported by substantial evidence. CFS responds that it did not have a statutory obligation to question extended relatives about the child's Indian ancestry since there was no reason to believe or know the child was an Indian child. We conclude the court properly found that CFS complied with its duty of initial inquiry, and its ICWA finding was supported by substantial evidence.

A. *Applicable Law*

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, overruled on other grounds by *In re Dezi C.* (2024)___Cal.5th___(Aug. 19, 2024,

6

S275578) [2024 Cal.Lexis 4634, *54] (*Dezi C.*).)  CFS and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child."  (§ 224.2, subd. (a).)  "The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families."  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 430 (*Antonio R*.).)  Section 224.2 "creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  [Citation.]  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  [Citation.]  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)  Only the duty of initial inquiry is at issue here.

The duty of initial inquiry begins with the initial contact when CFS must ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  Once a child is taken into temporary custody, CFS must ask the child, the parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child.  (§ 224.2, subd. (b).)  Extended family members include adults who are the child's

stepparents, grandparents, aunts, uncles, brothers, and sisters.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

CFS is obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status."  (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*).)  The juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so."  (*Ibid.*)  If the court finds that CFS has complied with its duty of inquiry and there is no reason to know that the child is an Indian child, then the court may find that ICWA does not apply.  (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).)  "A juvenile court's finding that ICWA does not apply implies 'that social workers had fulfilled their duty of inquiry.' "  (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 567.)  "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order."  (*In re A.M.* (2020) 47 Cal.App.5th 303, 314, overruled on other grounds by *Dezi C.*, *supra*,___Cal.5th___[2024 Cal.Lexis 4634 at *54].)  However, "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review."  (*In re Dezi C.*, *supra*,___Cal.5th___[2024 Cal.Lexis 4634 at *32]; see *In re K.H.* (2022) 84 Cal.App.5th 566, 589 ["[T]he court has relatively broad discretion to

determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case."].)

B. *The Court's ICWA Finding Is Supported by Substantial Evidence Since CFS Complied With Its Duty of Initial Inquiry*

It is undisputed that CFS did not ask the MGM about the child's potential Indian ancestry. CFS contends it did not have a statutory duty to "conduct a further ICWA inquiry that would include questioning the child's extended family members" since the parents informed the court they did not have Indian ancestry. CFS asserts that "[b]ased on the parent's [*sic*] response, there was no reason to know [or believe] the child was an Indian child." Thus, it was not obligated to conduct a further inquiry, and it satisfied its statutory duty of inquiry.

As a preliminary matter, we recognize that several courts have recently found that the section 224.2, subdivision (b) duty to include extended family members in the initial ICWA inquiry applies only when there is a warrantless removal under section 306 but not when the welfare department obtains a protective custody warrant pursuant to section 340 prior to removal. (See *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572; *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353-374 (conc. opn. of Kelley, J.), overruled on other grounds by *In re Dezi C.*, *supra*,___Cal.5th___[2024 Cal.Lexis 4634 at *54].) There is currently a split of authority among the Courts of Appeal on this issue, and the question is pending before the California Supreme Court.

9

(See *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447.) However, in the instant case, the child was not taken into protective custody under either section 306 or section 340. Rather, she was taken into protective custody under Arizona law. CFS subsequently received custody of the child pursuant to a transfer via UCCJEA regulations. We further note that, in this case, CFS does not contest that the expanded duty of initial inquiry under section 224.2, subdivision (b), applies. Therefore, under these case-specific circumstances, we will not address the split of authority and will assume the expanded duty under section 224.2, subdivision (b) applies.

As noted *ante*, section 224.2 imposes on CFS three distinct duties, starting with a duty of initial inquiry, which includes asking "extended family members" whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) "Extended family members" include the child's grandparents. (See 25 U.S.C. § 1903(2); see also § 224.1, subd. (c).) Then, "[w]hen the Agency has 'reason to believe' that an Indian child is involved, *further inquiry* regarding the possible Indian status of the child is required." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049, italics added; § 224.2, subd. (e).) "[I]f that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, at p. 1052.) Here, CFS had a duty of *initial* inquiry to ask the MGM about the child's potential Indian ancestry. (§ 224.2, subd. (b).) CFS's claim that no *further* inquiry was required because there was no reason to believe or know the child was an Indian child is therefore misplaced. (See *D.S.*, at pp. 1049-1050.)

10

Moreover, "section 224.2, subdivision (b), imposes [an express obligation] on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 431.) Thus, CFS's claim that it had no duty to inquire further simply because the parents informed the court they did not have any Indian ancestry has no merit. "[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child [is] to obtain information the parent may not have." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 556; see *id.* at p. 554 ["[P]arents may not know their possible relationship with or connection to an Indian tribe."].)

In any event, CFS satisfied its duty to inquire. At the June 30, 2022 detention hearing, both mother and father denied having Native American heritage in court, and they each filed a CFS inquiry form, confirming he/she had no Indian ancestry. Even so, on July 8, 2022, the social worker asked mother and father if they had Native American ancestry, and they again denied it. Mother then provided the maternal grandfather's name and contact information, and provided the MGM's name but did not have contact information for her. Father provided the social worker with the paternal grandmother's name and contact information.[2] The social worker called the maternal grandfather on July 13, 2022 and left a message. She followed up and called again on July 18, 2022, and he denied Native American ancestry and stated his family was Norwegian. The social worker called the paternal grandmother, and she denied Native American ancestry. The

_____

[2] The paternal grandfather was deceased.

social worker also inquired of a paternal cousin regarding Native American ancestry, and she denied having any.

In addition, the social worker talked to the maternal grandfather again on January 23, 2023, and he reiterated that he had no Native American ancestry and he was of Norwegian descent. He reported that he did not have contact information for the MGM, but to his knowledge, she was of German descent. He also referred the social worker to mother. Thus, the social worker contacted mother again and asked if there were any relatives she could interview about potential Native American ancestry, and mother had no additional information to provide. The social worker asked mother about the MGM, and mother said she would contact the MGM to ask about Indian heritage and either have the MGM contact the social worker, or she would provide the MGM's contact number. However, two days later, mother texted the social worker to say the MGM did not have a contact number. In view of these efforts, the court had a sufficient basis to determine that CFS's inquiry was adequate, and we discern no abuse of discretion in the court's determination that the ICWA inquiry was proper and adequate.

As to mother's claim that CFS failed its duty simply because it did not inquire of the MGM regarding the child's Indian ancestry, we observe that "[d]espite its broad terms, section 224.2, subdivision (b) does not require inquiry with every adult living extended family member." (*In re H.B.* (2023) 92 Cal.App.5th 711, 720.) " 'The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' "

12

(*Dezi C*., *supra*,___Cal.5th___[2024 Cal.Lexis 4634 at *32].) The MGM was apparently not reasonably available, especially since mother herself had no contact information for her. We further note the maternal grandfather had informed the social worker that the MGM was of German descent.

We conclude the juvenile court did not abuse its discretion in finding that CFS satisfied its initial duty of inquiry under section 224.2, subdivision (b). Moreover, the parents' repeated representations and ICWA form declarations, and the interviews of extended family members on both sides of the family, " 'reliably answered' " the question of whether the child was a Native American child. (*In re E.W.* (2023) 91 Cal.App.5th 314, 323.) The court's finding that ICWA did not apply in this case was supported by substantial evidence.

DISPOSITION

The court's order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL RECORDS

FIELDS_____
J.

We concur:

CODRINGTON_____
Acting P.J.

MENETREZ_____
J.

13